IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN HUTCHINSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CARCO GROUP, INC., ET AL. | : | NO. 15-1570 |

<u>MEMORANDUM</u>

**Padova, J.**                                                                                      **September 29, 2015**

Plaintiff Kevin Hutchinson brings this action against Defendants Carco Group, Inc. ("Carco") and the County of Gloucester Virginia Circuit Court (the "Gloucester Court") pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* He alleges that Carco, a consumer reporting agency ("CRA"), erroneously reported to Plaintiff's prospective employer that Plaintiff had been convicted of a felony in Gloucester County, after Carco received that erroneous information from the Gloucester Court. In essence, Plaintiff asserts that Carco violated the FCRA by failing to follow reasonable procedures to ensure that it reported Plaintiff's accurate criminal history information and that the Gloucester Court violated the FCRA by providing erroneous information to Carco. Both Defendants have filed Motions to Dismiss the claims against them. For the following reasons, we grant in part and deny in part Carco's Motion and grant the Gloucester Court's Motion.

**I.     BACKGROUND**

The Complaint alleges the following facts. In 1996, when Plaintiff was a high school student living in Philadelphia, a different individual with his same name, i.e., Kevin Hutchinson, was convicted in Gloucester County, Virginia for cocaine possession. (Compl. ¶¶ 21-22.) The Gloucester Court often confused the Kevin Hutchinson who had been convicted with Plaintiff and, as a result, "produced incorrect records regarding Plaintiff's criminal record" on more than one occasion. (<u>Id.</u> ¶ 24.) Plaintiff informed the Gloucester Court of its mistaken reporting several

times and even challenged the court's records in December 2010 by undergoing a fingerprinting test. (Id. ¶¶ 25-26.) Despite Plaintiff's fingerprinting test, the Gloucester Court continued to confuse Plaintiff's criminal records with those of the other Kevin Hutchinson and would report the other Kevin Hutchinson's felony conviction as the criminal record information for Plaintiff. (Id. ¶ 27.)

Plaintiff submitted an employment application to Comcast Corporation ("Comcast") on December 21, 2013, and disclosed to the Senior Recruiter, Christopher Donegan, two misdemeanor convictions, one from 2002 and one from 2012. (Id. ¶¶ 28-30.) Donegan told Plaintiff that the misdemeanors did not disqualify him from applying for a position with Comcast and, on January 20, 2014, Donegan offered Plaintiff a position. (Id. ¶¶ 31-32.) Although Comcast's offer was contingent on the successful completion of a background check, Plaintiff was given a tentative employment start date of February 10, 2014. (Id. ¶¶ 32-33.)

Pursuant to a contract with Comcast, Carco conducted Plaintiff's background check, which included a search of the criminal history records held by the Gloucester Court. (Id. ¶¶ 34-36.) Carco's search of the Gloucester Court's records produced the other Kevin Hutchinson's 1996 felony conviction. (Id. ¶ 37.) Carco provided this information to Comcast in a consumer report that it submitted to Comcast on January 29, 2014. (Id. ¶¶ 38-39.)

On January 30, 2014, after receiving Carco's consumer report, Donegan sent an email to Plaintiff asking Plaintiff to explain the 1996 conviction. (Id. ¶¶ 40-42; Ex. A.) On January 31, 2014, Carco emailed Plaintiff to inform him that the background check it had conducted might affect his employment offer and that Plaintiff should contact Donegan with any further questions. (Compl. ¶¶ 43-45; Ex. B.)

After receiving the emails from Donegan and Carco, Plaintiff sought to correct the mistake in his consumer report and, in late January 2014, contacted the Commonwealth of Virginia,

Criminal Justice Information Services Division (the "Division").  (Compl. ¶¶ 46-47.)  On February 3, 2014, Plaintiff received a letter from Tricia Powers, Lieutenant of the Division, who confirmed that Plaintiff's fingerprints did not match the fingerprints on file for the Kevin Hutchinson who had been convicted in 1996 and stated that, as a result, Plaintiff's personal identifiers had been removed from the Division's criminal records.  (Id. ¶¶ 48-50; Ex. C.)  That same day, Plaintiff filed a dispute with Carco to contest the accuracy of the conviction information in his consumer report.  (Compl. ¶ 51; Ex. D.)  Plaintiff sent a copy of the Lieutenant's letter acknowledging the mistake to Donegan on February 6, 2014.  (Compl. ¶ 52.)  In addition, Plaintiff contacted the Gloucester Court's Clerk of Records on several occasions to discuss its criminal records system and, on February 7, 2014, he spoke with the Clerk of Records.  (Id. ¶¶ 53-54.)  The Clerk of Records advised him to consult with his attorney to resolve the criminal record issue.  (Id. ¶ 55.)

Carco sent a letter to Plaintiff on February 17, 2014, advising him that his consumer report was under review and that Carco had also notified Comcast that this review was underway.  (Id. ¶¶ 56-57; Ex. D.)  In the same letter, Carco informed Plaintiff that it had contacted the Gloucester Court for more information on the 1996 felony conviction and that the conviction records the Gloucester Court sent back to Carco listed Plaintiff's name, social security number, and date of birth as the defendant's identifying information.  (Compl. ¶ 58; Ex. D.)  Nevertheless, after completing its review, Carco sent Plaintiff a March 1, 2014 letter, which acknowledged that Plaintiff was not the convicted Kevin Hutchinson from the Gloucester Court records and stated that Carco had sent an updated copy of Plaintiff's consumer report to Comcast.  (Compl. ¶¶ 60-61.)  After receiving the updated report from Carco, Comcast reinstated Plaintiff's offer of employment on March 28, 2014, and Plaintiff began work on May 12, 2014.  (Id. ¶¶ 62-63.)

Plaintiff filed the instant action on March 27, 2015.  The Complaint contains three Counts.

Counts I and II assert that Carco violated § 1681e(b) of the FCRA by either willfully or negligently failing to follow reasonable procedures to assure the maximum possible accuracy of the information it reported in Plaintiff's consumer report.  See 15 U.S.C. § 1681e(b); id § 1681n (providing for a cause of action for a willful violation of § 1681e(b)); id § 1681o (providing a cause of action for a negligent violation of § 1681e(b)).  Count III asserts that the Gloucester Court violated § 1681s-2 of the FCRA by furnishing information that it knew or had reason to know was inaccurate.  See 15 U.S.C. § 1681s-2.  Carco has filed a Motion to Dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6), and the Gloucester Court has filed a Motion to Dismiss the claim against it pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and/or 12(b)(6).

## II. LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration

in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'"  W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

 A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Rule 12(b)(1) "'may be treated as either a facial or factual challenge to the court's subject matter jurisdiction.'"  Minuti v. Internal Revenue Serv., 502 F. App'x 161, 162 (3d Cir. 2012) (quoting Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)).  Where, as here, the defendant argues that the complaint on its face fails to establish the court's jurisdiction, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  Gould Elecs., 220 F.3d at 176 (citations omitted).  Ordinarily, the plaintiff bears the burden of showing that jurisdiction exists.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).  However, where the defendant's challenge to subject matter jurisdiction is based on sovereign immunity, "the party asserting the immunity bears the burden" of showing that immunity applies.  M & M Stone Co. v. Pennsylvania Dep't of Envtl. Prot., Civ. A. No. 07–4784, 2008 WL 4467176, at *13 (E.D. Pa. Sept. 29, 2008) (citation omitted).

### III.     DISCUSSION

#### A.     Carco's Motion to Dismiss

As noted above, Counts I and II of the Complaint assert claims based on Carco's alleged violation of 15 U.S.C. § 1681e(b) insofar as it provided inaccurate criminal information to Comcast and allegedly failed to follow reasonable procedures to guard against that inaccuracy. Count I asserts a claim for willful violation of § 1681e(b), and Count II asserts a claim for negligent noncompliance with that same provision.[1]  Carco seeks to dismiss both claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

The principal FCRA provision on which Plaintiff's two claims are based is § 1681e(b), which provides that when a consumer reporting agency "prepares a consumer report[,] it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Plaintiff may bring a private right of action for negligent noncompliance with this provision pursuant to 15 U.S.C. § 1681o(a) and may bring an action for willful noncompliance pursuant to 15 U.S.C. § 1681n(a). In order to state a claim for noncompliance with § 1681e(b), a complaint must allege that: "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to

---

[1] The Complaint also asserts that Carco negligently and willfully violated § 1681d(d)(3) of the FCRA, which prohibits a consumer reporting agency from furnishing "an investigative consumer report" that contains certain types of unverified information.  15 U.S.C. § 1681d(d)(3). However, in its Motion to Dismiss, Carco argues that it prepares only non-investigative consumer reports that do not fall within the purview of § 1681d, which only applies only to "investigative consumer reports."  See Houghton v. N.J. Mfrs. Ins. Co., 795 F.2d 1144, 1147 (3d Cir. 1986).  In his response, Plaintiff does not take issue with Carco's argument in this regard and agrees to "strike . . . and/or withdraw any reference in the . . . Complaint that the report produced by Carco in this matter constituted an 'investigative consumer report.'"  (Pl.'s Br. in Resp. to Carco's Mot. at 1.)  We read Plaintiff's response to abandon any reliance on § 1681d(d)(3), and we therefore dismiss Plaintiff's claims insofar as he relies on that provision.

defendant's failure to follow reasonable procedures to assure maximum possible accuracy;[2] (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir. 1996). Moreover, to state a cause of action for willful noncompliance, and thereby collect punitive damages pursuant to 15 U.S.C. § 1681n, the complaint must allege facts that support the inference that the defendant acted in knowing or reckless disregard of the FCRA's requirements. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57-58 (2007).

Here, Carco acknowledges that it included inaccurate criminal information in Plaintiff's consumer report, but it nevertheless argues that we should dismiss Plaintiff's claims for both negligent and willful noncompliance with § 1681e(b) because the Complaint does not plausibly allege -- and cannot allege -- that the inaccuracy was due to Carco's failure to follow reasonable procedures. Specifically, Carco argues that (1) its reliance on the accuracy of the Gloucester Court's judicial document was reasonable as a matter of law, and (2) the Complaint fails to allege any facts to support its purely formulaic assertion of unreasonableness. Carco further argues that we should dismiss Plaintiff's claim for willful noncompliance because the Complaint does not allege facts to support an inference that it acted willfully.

### 1. Reasonable Procedures as a Matter of Law

Ordinarily, a determination as to whether a credit reporting agency's procedures are reasonable involves application of a balancing test that weighs the "'potential harm from inaccuracy against the burden of safeguarding against such inaccuracy.'" Philbin, 101 F.3d at 963 (quoting Bryant v. TRW, Inc., 689 F.2d 72, 78 (6th Cir. 1982)). Conducting such a balancing test at the motion to dismiss stage would require the court "to make several factual assumptions

---

[2] The United States Court of Appeals for the Third Circuit has stated that "[r]easonable procedures are those that a reasonably prudent person would undertake under the circumstances." Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir. 1996) (internal quotation omitted).

before any discovery has been even accomplished" and, thus, it is unusual for a court to make a determination as to reasonableness of a defendant's procedures on a motion to dismiss. Dively v. Trans Union LLC, Civ. A. No. 11-3607, 2012 WL 246095, at *4 (E.D. Pa. Jan. 26, 2012).

Carco nevertheless asserts that, prior to the commencement of discovery, we should hold that its reliance on the accuracy of a judicial document was reasonable as a matter of law. In support of its position, Carco cites to an opinion of the United States Court of Appeals for the Seventh Circuit, Henson v. CSC Credit Servs., 29 F.3d 280 (7th Cir. 1994), which explicitly held that "as a matter of law, a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be inaccurate." Id. at 285; see also id. at 286 ("[A] credit reporting agency may initially rely on public court documents, because to require otherwise would be burdensome and inefficient.").

Henson, however, has not been adopted as the law in the Third Circuit. Dively, 2012 WL 246095, at *5. Unlike the Seventh Circuit, the Third Circuit has never defined circumstances in which a CRA's procedures will be considered reasonable as a matter of law. Id. at *4 ("'The Third Circuit has not provided guidance as to what procedures are reasonable as a matter of law.'" (quoting O'Brien v. Equifax Info. Servs., LLC, 382 F. Supp. 2d 733, 739 (E.D. Pa. 2005))). Moreover, district courts within the Third Circuit have explicitly rejected the Seventh Circuit's more general presumption of reasonableness for certain reliable records. See O'Brien, 382 F. Supp. 2d at 739 ("There is no reason to believe that the Third Circuit would adopt the Seventh Circuit's holding . . . that a [CRA's] procedures are reasonable as a matter of law whenever the [CRA] simply repeats information received from a reputable source."); O'Connor v. Trans Union Corp., Civ. A. No. 97-4633, 1999 WL 773504, at *4 (E.D. Pa. Sept. 29, 1999). Indeed, at least one district court has opined that adopting a presumption of reasonableness would give "no

8

incentive for credit reporting agencies . . . to ever change or improve their current procedures." O'Brien, 382 F. Supp. 2d at 739. Moreover, unlike the Seventh Circuit, the Third Circuit has never said that a CRA must have "notice of an inaccuracy and failed to act before it can be held liable under § 1681e(b)." Dively, 2012 WL 246095, at *3; see also O'Connor, 1999 WL 773504, at *4 (noting that the Third Circuit does not require a plaintiff to show that the defendant was notified of the inaccurate information prior to preparing the consumer report in order to prevail on a claim pursuant to § 1681e(b)).

Given the state of the law in this Circuit and the general rule that cautions against making a determination of reasonableness at the motion to dismiss stage, we reject Carco's request that we hold at this early stage that its reliance on the Gloucester Court's judicial records was reasonable as a matter of law. We therefore deny Carco's request to dismiss Plaintiff's negligent and willful noncompliance claims on that basis.

### 2. Factual Allegations Regarding Unreasonableness

As noted above, Carco argues in the alternative that we should dismiss Plaintiff's negligent and willful noncompliance claims because the Complaint does not allege sufficient facts regarding Carco's procedures to provide for the inference that Carco failed to follow "reasonable procedures to assure maximum possible accuracy." Philbin, 101 F.3d at 963. In Carco's view, the Complaint's "unsupported allegations that Carco failed to follow reasonable procedures constitute a 'formulaic recitation' of one element of [Plaintiff's] cause of action," which cannot survive a challenge under Twombly. (Carco's Mem. at 8 (citing Twombly, 550 U.S. at 555).)

Carco correctly notes that the Complaint does not include any factual allegations concerning Carco's procedures, much less facts permitting us to assess the reasonableness of those procedures. Rather, the Complaint simply alleges that Plaintiff's consumer report contained inaccurate information, i.e., the 1996 felony conviction, and then baldly alleges that Carco failed to

9

follow reasonable procedures to assure the maximum possible accuracy of that information. (Compl. ¶¶ 37, 65, 78b.)

In spite of these sparse allegations, we conclude that the Complaint's lack of specific facts on which to ground an assessment of reasonableness is not fatal to Plaintiff's claims in light of the intensely factual nature of the reasonableness inquiry and the reality that all information regarding Carco's procedures for verifying information are within Carco's control.  Moreover, in Philbin, the Third Circuit specifically considered the plaintiff's burden of proof in connection with the reasonableness prong of a § 1681e(b) claim and allowed for the possibility that a plaintiff may establish his prima facie case as to that prong by establishing a mere inaccuracy, thereby leaving it to the defendant to establish that the procedures it used were reasonable.  Philbin, 101 F.3d at 964-66 (citations omitted); see also id. at 965 (observing that the justification for such an approach is that inaccuracies are caused "by an instrumentality under the exclusive control of the defendant," and that "[s]uch a defendant is in a far better position to prove that reasonable procedures were followed than a plaintiff is to prove the opposite"); Dively, 2012 WL 246095, at *2 (citing Philbin, 101 F.3d at 964-66).   If that burden of proof is to apply in this case, as it may, it would be illogical to require Plaintiff to plead additional facts in his Complaint that he will have no burden of proving at trial.  Thus, we reject Carco's argument that Plaintiff has failed to state a claim upon which relief may be granted based on his failure to allege sufficient facts regarding the reasonableness of Carco's procedures.

We therefore reject Carco's only two arguments with respect to the negligent violation of § 1681e(b) – i.e., that its procedures were reasonable as a matter of law and its argument that Plaintiff has not included sufficient factual allegations regarding reasonableness.  As a result, we deny Carco's Motion to Dismiss insofar as it concerns Count II's claim for negligent violation of § 1681e(b).

### 3. Factual Allegations of Willfulness

Carco argues that, even if we permit the negligent noncompliance claim to proceed and refuse to dismiss the willful noncompliance claim on the first two grounds argued, we should nevertheless dismiss Plaintiff's willful noncompliance claim for the alternative reason that the Complaint does not allege facts that would permit an inference that it acted willfully. In response, Plaintiff concedes that "this case may ultimately fall under the negligence prong of the FCRA," but contends that "at this point in the litigation it is premature to dismiss Plaintiff's claim that Carco's failure was willful" because Carco should have realized the high risk of relying on public records, and only searching based on date of birth, name and social security number, and Carco should have done "something more," such as adding a fourth identifying factor. (Pl.'s Br. in Resp. to Carco's Mot. at 4-5.)

As noted above, in order to show a willful violation of the FCRA, a plaintiff must prove that the defendant "'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" Cushman v. Trans Union Corp, 115 F.3d 220, 226 (3d Cir. 1997) (quoting Philbin, 101 F.3d at 970). The term "willful" encompasses violations that were done both knowingly and in reckless disregard of the FCRA's requirements. See Safeco, 551 U.S. at 57. The Supreme Court has elaborated that:

> a company subject to FCRA does not act in reckless disregard of [the statute] unless the action is not only a violation under a reasonable reading of the statute's terms, but [also] shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

Id. at 69. It also made clear that "[a] defendant's conduct is reckless only if it was 'objectively unreasonable' in light of 'legal rules that were clearly established at the time.'" Fuges v. Southwest Fin. Servs., Ltd., 707 F.3d 241, 249 (3d Cir. 2012) (quoting Safeco, 551 U.S. at 69-70) (internal citations omitted). "Thus, even when a court disagrees with a party's reading of [the]

11

FCRA, it may not impose liability for a reckless, and therefore willful, violation of the statute unless that party's reading is 'objectively unreasonable.'" Id. (citing Safeco, 551 U.S. at 69). Indeed, as the Third Circuit has recognized, "'[w]here . . . the statutory test and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator.'" Id. (quoting Safeco, 551 U.S. at 70 n.20).

Here, Carco again points to the Seventh Circuit's decision in Henson and argues that it acted wholly in accordance with the Seventh Circuit's reasonable interpretation of a CRA's duties under § 1681e(b) when it relied on the Gloucester Court's public conviction records. Carco further emphasizes that the Complaint's allegations make clear that, upon notice from Plaintiff that the Gloucester Court's records might be erroneous, Carco promptly initiated a reinvestigation of the information concerning Plaintiff's criminal record and issued a new consumer report when an error was confirmed. (See Compl. ¶¶ 51, 56-57, 60-61.) Under these circumstances, Carco contends, there are simply no alleged facts on which to rest an inference that it willfully violated any "clearly established" duties that the FCRA imposes.

We conclude that Plaintiff has, in fact, failed to plausibly allege that Carco acted in reckless or willful violation of its statutory obligations under § 1681e(b). As noted above, "[a] defendant's conduct is reckless only if it was 'objectively unreasonable' in light of 'legal rules that were clearly established at the time.'" Fuges, 707 F.3d at 249 (citing Safeco, 551 U.S. at 69-70) (internal citations omitted). Here, Carco had the statutory obligation to utilize "reasonable procedures" to ensure the "maximum possible accuracy" of the criminal record information that it reported. 15 U.S.C. § 1681e(b). What is "reasonable," however, is clearly subject to interpretation, and Plaintiff has not identified any "clearly established law" (either from the judiciary or a federal agency) that establishes that it is unreasonable for a CRA to rely on the

accuracy of public court conviction records, particularly when those records match the name, birth date and social security number of the consumer about whom a report is being prepared. Moreover, given the Seventh Circuit's decision in Henson that it is reasonable as a matter of law to rely on such public judicial records absent prior notice of the records' inaccuracy, and the Third Circuit's silence on this same issue, it is plain that the law is not "clearly established" that such reliance is objectively unreasonable.  See Fuges, 707 F.3d at 253 (stating that, in the absence of established legal rules, a CRA's interpretation of the FCRA is not objectively unreasonable if there is no guidance from courts and/or agencies that warn the CRA away from its chosen interpretation); id. at 251 (stating that an interpretation is objectively reasonable if the interpretation "that would allow the conduct in question is 'an interpretation that could reasonably have found support in the courts.'" (quoting Safeco, 551 U.S. at 70 n.20)).

In sum, although a factfinder might ultimately conclude that it was unreasonable for Carco to rely on the Gloucester Court's record under the circumstances presented in this case (and may conclude that Carco acted carelessly), the Complaint has simply alleged no factual basis on which to rest an inference that Carco acted recklessly or willfully in relying on such records.  We therefore conclude that Plaintiff has failed to state a claim upon which relief may be granted for willful noncompliance of § 1681e(b).  Accordingly, we dismiss Count I of the Complaint, which asserts the willful noncompliance claim.

      **B.**      **The Gloucester Court's Motion to Dismiss**

Count III of the Complaint asserts a FCRA claim against the Gloucester Court pursuant to 15 U.S.C. § 1681s-2(b), based on the Gloucester Court's alleged reporting of false and erroneous information to Carco.  In its Motion, the Gloucester Court argues, inter alia, that we should dismiss this claim for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Specifically, the Gloucester Court argues that we lack subject matter

jurisdiction over this claim because it is an arm of the Commonwealth of Virginia, which is entitled to sovereign immunity under the Eleventh Amendment.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As such, the Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 n.2 (3d Cir. 1996). "The Supreme Court has made clear that, under that Amendment, 'an unconsenting State is immune from suits brought in federal courts by [its] own citizens as well as by citizens of another State.'" Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs., 730 F.3d 291, 318 (3d Cir. 2013) (quoting Edelman v. Jordan, 415 U.S. 651, 663 (1974)). There are two exceptions to this bar: (1) if the state consents to suit, or (2) if Congress abrogates the state's immunity. Id. (citing Blanciak, 77 F.3d at 694).

Plaintiffs do not contest that the Gloucester Court is an arm of the state and, thus, is entitled to any sovereign immunity to which the state is entitled.[3] They likewise do not argue that the Commonwealth of Virginia has consented to be sued.[4] Instead, they appear to argue that

---

[3] Article VI of the Virginia Constitution states that "[t]he judicial power of the Commonwealth shall be vested in a Supreme Court and in such other courts of original or appellate jurisdiction subordinate to the Supreme Court as the General Assembly may from time to time establish." Va. Const. art. VI § 1. Pursuant to this constitutional authority, the Virginia General Assembly established Circuit Courts in every county of the Commonwealth, including Gloucester. See Va. Code Ann. § 17.1-500. Thus, the Gloucester Court is "an entity of the state established by the General Assembly [and] a suit against the Circuit Court . . . is the same as a suit against the state itself." Tucker v. Beneficial Financial I, Inc., Civ. A. No. 7:14cv00673, 2015 WL 225466, at *2 (W.D. Va. Jan. 16, 2015); see also Diment v. Supreme Ct. of Va., Civ. A. Nos. 03-33 & 07-40, 2007 WL 4302867, at *2 (W.D. Va. Dec. 6, 2007) (concluding that Virginia Supreme Court is as an arm of the Commonwealth of Virginia and entitled to Eleventh Amendment immunity).

[4] Plaintiff emphasizes that a claim under the FCRA is essentially a negligence claim, and we note that Virginia Tort Claims Act (the "VTCA"), Va. Code Ann. § 8.01-195.1 *et seq.*, waives

14

Congress abrogated Virginia's immunity by enacting the FCRA, which imposes obligations on and provides for liability of "persons," which the statute defines to include the "government" and "governmental subdivision[s] or agenc[ies]." See 15 U.S.C. § 1681a(b).  However, in order to abrogate the States' Eleventh Amendment immunity, Congress must not only "make[] its intention to abrogate unmistakably clear in the language of the statute," but also "act[] pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 726 (2003) (citations omitted).  Thus, where Congress relies only on its Article I Commerce power to enact a statute, that statute cannot function to abrogate the States' immunity.  Id. at 727 ("Congress may not abrogate the States' sovereign immunity pursuant to its Article I power over commerce." (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 59-66 (1996))).

Applying these legal standards, we conclude that Congress did not abrogate the States' sovereign immunity in the FCRA because Congress enacted the FCRA pursuant to its Commerce clause powers and, thus, lacked the authority to take away the States' sovereign immunity in that statute.  See, e.g., Densborn v. Trans Union, LLC, Civ. A. No. 08-3631, 2009 WL 331466, at *2 (N.D. Ill. Feb. 10, 2009) (citations omitted); Sorrell v. Ill. Student Assistance Comm'n, 314 F. Supp. 2d 813, 817 (C.D. Ill. 2004); O'Diah v. New York City, Civ. A. No. 02-274, 2002 WL 1941179, at *6 (S.D.N.Y. Aug. 21, 2002) (citations omitted); see also Wright v. Applied Bank, Civ. A. No. 11-585, 2012 WL 3758957, at *2 (D. Del. Aug. 28, 2012) (finding Philadelphia

---

Virginia's "sovereign immunity in some cases for tort liability."    McNamara v. Va. Div. of Child Support Enforcement, Civ. A. No. 10-782, 2010 WL 9216071, at *1 (E.D. Va. Nov. 16, 2010) (citations omitted); see also Va. Code Ann. § 8.01-195.4.  However, the VTCA "waiver extends only to actions filed in state court." McNamara, 2010 WL 9216071, at *1.  Accordingly, the VTCA does not function to waive immunity for the instant FCRA action in federal court.   Id. (concluding that there is no federal subject matter jurisdiction over a VTCA claim against an arm of the Commonwealth of Virginia because the statute "explicitly limits jurisdiction over claims brought under the Act to Virginia courts" (citation omitted)).

Traffic Court to have Eleventh Amendment immunity from FCRA claim). We therefore reject Plaintiff's argument that the Gloucester Court is not entitled to immunity because Congress has abrogated that immunity, conclude that the Gloucester Court has met its burden of proving that it is entitled to sovereign immunity, and dismiss the FCRA claim against the Gloucester Court for lack of subject matter jurisdiction.

**IV. CONCLUSION**

For the foregoing reasons, we grant in part and deny in part Carco's Motion to Dismiss, and grant the Gloucester Court's Motion. Specifically, we grant Carco's Motion pursuant to Fed. R. Civ. P. 12(b)(6) with respect to Count I regarding Carco's alleged willful violation of § 1681e(b) and Count II regarding Cargo's alleged negligent violation of § 1681d(d)(3), but deny the Motion with respect to Count II regarding Carco's alleged negligent violation of § 1681e(b). At the same time, we grant the Gloucester Court's Motion insofar as it seeks dismissal Count III, the only claim against it, for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.